

# THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

———————————————————————X

MBIA, Inc.
113 King Street
Armonk, NY 10504

                         Plaintiff

    vs.

SERVICEFORCE, INC.
333 Meadowlands Pkwy #1
Secaucus, NJ 07094

    and

CONTROL HOLDING GROUP, INC.
d/b/a SERVICEFORCE, INC.
333 Meadowlands Pkwy #1
Secaucus, NJ 07094

                    Defendants

———————————————————————X

## COMPLAINT

## JURY TRIAL DEMANDED

AND NOW, comes the Plaintiff, MBIA, Inc., by and through undersigned counsel, as

and for its Complaint and hereby states as follows:

## PARTIES

1.    Plaintiff, MBIA, Inc., is a foreign business corporation registered to do business

in the State of New York, with its principal place of business located at 113 King Street,

Armonk, NY 10504.

2.    Defendant, ServiceForce, Inc., is a Delaware business corporation registered to do

business in the State of New York, with its principal place of business located at 333

Meadowlands Parkway #1, Secaucus, New Jersey 07094.

3.    Defendant, Control Holding Group, Inc., d/b/a ServiceForce, Inc., is a Delaware business corporation registered to do business in the State of New York, with its principal place of business located at 333 Meadowlands Parkway #1, Secaucus, New Jersey 07094.

4.    This claim is a subrogation action being brought against defendants for repayment of monies paid by plaintiff's insurance companies arising from an occurrence at plaintiff's facility on or around July 3, 2005, of which it is believed the defendant was the negligent party.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over the parties and the subject matter of this action pursuant to 28 U.S.C. §1332 in that the action is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6.    Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.D.C. §1391(a) because the subject property is located within the Southern District of New York and the events and acts and omissions giving rise to this claim occurred in the State of New York.

## GENERAL ALLEGATIONS

7.    MBIA and ServiceForce, Inc., entered into a Maintenance and Operations Service Agreement on or about July 1, 2004, to provide operation and maintenance services to MBIA, including, but not limited to, electrical maintenance. A true and correct copy of said Agreement is attached hereto as Exhibit "A".

8.    On or about July 3, 2005, a failure within the electrical supply system located in an underground vault/manhole malfunctioned at MBIA's facility resulting in smoke and fire damage to the property.

9.    The aforesaid damages sustained by MBIA are the direct and proximate result of negligence, breach of contract, and other liability producing conduct of defendants.

10.    The plaintiff hereby demands a trial by jury on all counts herein.

## COUNT I - NEGLIGENCE

11.    Plaintiff incorporates herein by reference the allegations set forth in the proceeding paragraphs 1 through 10 above, as though more fully set forth at length herein.

12.    The aforesaid incident and damages sustained by Plaintiff were the direct and proximate result of the negligence, carelessness and/or liability producing conduct of defendants, including negligent acts and/or omissions of such defendants as performed by and through their agents, employees and/or servants, in the operation, management, maintenance, control, inspection, renovation and/or repair, testing and remediation of the subject property, as more specifically described as follows:

   a.    failing to exercise reasonable care in the following manner:

   i.    Failing to determine that a defective and dangerous condition existed at the subject property;

   ii.    Failing to determine that the main fuses and ground fault protection was improperly set, improperly connected or out of calibration;

   iii.    Failing and neglecting to determine that the conduit running between the buildings and the manholes was not properly laid out and installed;

   iv.    Failing to properly and timely maintain the premises;

   v.    Failing to properly warn those lawfully present at the subject property of the dangerous and harmful conditions;

   vi.    Failing to take timely and proper measures to prevent the damages sustained by Plaintiffs; and

16.    The contract incorporates the duties and obligations of the defendants, including, but not limited to the duty to provide services for the safe and efficient operation of the building, including, but not limited to the electrical facilities.

17.    The defendants breached the contract as follows:

(a)  Failing to determine that such defects existed at the property;

(b)  Failing to timely and properly remedy said defects;

(c)  Failing to perform the work in accordance with accepted standards of practice and in otherwise failing to perform the work in the manner required by the contract.

18.    As a result of the damages directly and proximately caused by the negligence and carelessness of defendants, MBIA sustained and incurred damages to its property in an amount in excess of $400,000.00.

**WHEREFORE,** Plaintiff demands judgment in its favor and against defendants, individually and/or jointly and severally, plus pre-judgment and post-judgment interest, costs of suit, attorney' and such other relief as this Court deems appropriate under the circumstances.

Dated: New York, New York
        June 27, 2008

Yours etc.,

**NELSON LEVINE deLUCA & HORST, LLC**

BY:    _____
        Thomas J. Bracken, Esq. (TJB/8315)
        Attorneys for Plaintiffs
        120 Broadway, Suite 995
        New York, NY  10271
        Tel.: (212) 233-0130
        Fax: (212) 233-0172

TO:

SERVICEFORCE, INC.
333 Meadowlands Pkwy #1
Secaucus, NJ  07094


CONTROL HOLDING GROUP, INC.
d/b/a SERVICEFORCE, INC.
333 Meadowlands Pkwy #1
Secaucus, NJ  07094

# MAINTENANCE AND OPERATIONS SERVICE AGREEMENT

THIS MAINTENANCE AND OPERATIONS SERVICE AGREEMENT (this "Agreement") is between SERVICEFORCE, INC. ("Contractor") and MBIA INSURANCE CORPORATION, located at 113 King Street, Armonk, NY 10504 ("MBIA"), is made and entered into as of this 1st day of July, 2003("Contract" billing period).

## WITNESSETH:

**WHEREAS,** MBIA desires to obtain maintenance and operations services at certain times and places; and

**WHEREAS,** Contractor is in the business of supplying such maintenance and operations services and is willing to provide the same for MBIA on the terms and conditions set forth below,

**NOW, THEREFORE,** in consideration of the mutual promises and covenants hereinafter set forth, the parties agree to be bound as follows:

1.      **TERM**

     This Agreement shall be in effect from July 1, 2003 through June 30, 2004, and under the extended terms (the "One Year Option") through June 30, 2005, unless cancelled by either party in accordance with the provisions of this Agreement.

2.      **SERVICES AND STANDARDS**

     2.1      During the term of this Agreement, Contractor shall furnish to MBIA the maintenance and operations services described in <u>Exhibit A</u> attached hereto, incorporated herein by reference and which may be amended from time to time (the "Work") at 113 King Street, Armonk, NY 10504 (the "Facilities"). Such services shall be performed in accordance with the specifications and other requirements referenced or set forth in <u>Exhibit A</u>. It is understood that certain services may be required and shall be provided under this Agreement, even though not specifically listed in <u>Exhibit A</u>.

     2.2      The Work shall be performed diligently and in a first-class manner, with superior quality supplies, materials, equipment and workmanship. The services shall be performed in such manner as to minimize the possibility of any annoyance, interference or disruption of the occupants of the facility and their invitees.

     2.3      Contractor's employees who operate motorized vehicles in the performance of the Work must posses a valid New York State driver license.

2.4    All services shall be furnished by Contractor as an independent contractor. All personnel utilized by Contractor in the furnishing of such services shall be employees of the Contractor and under no circumstances shall be deemed employees of MBIA. Contractor shall withhold (if applicable), pay and report, for all personnel assigned to MBIA's Work, federal, state and local income tax withholding, social security taxes, employment head taxes, and unemployment insurance applicable to such personnel as employees of Contractor. Contractor shall bear sole responsibility for any health or disability insurance, retirement benefits, or welfare, pension or other benefits (if any) to which such personnel may be entitled. Contractor agrees to defend, indemnify and hold harmless MBIA, MBIA's officers, directors, employees and agents, and the administrators of MBIA's benefit plans, from and against any claims, liabilities or expenses relating such compensation, tax, insurance or benefit matters.

2.5    Contractor agrees to use its best efforts to follow reasonable instructions from MBIA's Managing Director of Management Services (the "Managing Director") or the Managing Director's designee regarding the standards, procedures, and practices to be followed in furnishing services pursuant to this Agreement. In the absence of such instructions, services will be furnished in accordance with the generally accepted standards, practices, and procedures normally followed in connection with such operations. MBIA's Managing Director or Managing Director's designee shall be authorized to request services that are within the scope of work on behalf of MBIA.

2.6    All personnel utilized by Contractor shall be properly attired in accordance with the uniform specifications set forth in Exhibit A hereto and shall be able to perform the contracted services competently. Contractor shall be fully responsible for all acts and omissions of such personnel. All services performed hereunder shall be performed in a manner which ensures health and safety.

2.7    Contractor shall ensure that all personnel utilized in the performance of the services required hereunder, are qualified for the duties to which they are assigned and receive all operational and safety training necessary, for the safe and competent performance of such services, including, without limitation, any training required by applicable laws, rules, regulations and procedures. All training must be documented by Contractor. Such documentation must be maintained by Contractor for at least two (2) years, or the period of time specified by applicable laws, rules, regulations and procedures, whichever period of time is longer. MBIA shall have the right to conduct audits of training records to ensure compliance with this requirement.

2.8    Contractor agrees to maintain, at all times, a competent work supervisor who resides in reasonable proximity to the Facilities. Contractor further agrees to keep MBIA's Managing Director continuously advised of the address and telephone number at which such work supervisor may be contacted in connection with emergencies, worker absences, accidents involving workers, or substandard performance of the Work. The availability of such address(s) or telephone number(s) shall in no way obligate MBIA to communicate any such information to Contractor.

2

2.9    Contractor agrees to fully correct and repair, in a timely fashion and at no cost to MBIA, any damage, defect or other errors (such damage, defects and or errors shall be determined in MBIA's sole discretion) made or incurred in connection with the Work. Contractor further agrees to correct, in a timely fashion and at no cost to MBIA, any Work that fails to conform, in MBIA's sole discretion, to the performance standards set fort in <u>Exhibit A</u>.

## 3.    PAYMENT FOR SERVICES

In consideration of the performance of this Agreement, MBIA will pay Contractor in current funds for the satisfactory performance of the Work, including without limitation, all labor, materials, equipment, overhead, and profit, a fee calculated in accordance with <u>Schedule A</u> attached hereto.

## 4.    STAFFING

The existing Collective Bargaining Agreement expires February 28, 2005. MBIA monthly payments to Service Force, Inc., will be adjusted to reflect agreed upon wage and benefit increase.

4.1    The following staffing as outlined in <u>Exhibit A</u> will apply to the facilities:

- One (1) Chief Engineer
- One (1) Assistant Chief Engineer
- One (1) Engineer
- One (1) Apprentice

## 5.    CHANGES IN THE WORK

5.1    MBIA may make changes in the scope of the Work, provided the changes are reasonable. Contractor shall expeditiously perform such changes as directed. A change in the Work may include, without limitation, a decrease or increase in the number of employee hours required for the Work. If Contractor believes any such change shall result in an increase in the cost of the Work, it shall be the obligation of the Contractor to notify MBIA, in writing, prior to rendering such services or incurring such expenses. Unless the Managing Director or such other duly authorized representative of MBIA gives advance written approval of such additional services or expenses, MBIA shall not be responsible for any extra compensation claimed by Contractor on account of such services or expenses. Subject to obtaining such written approval, Contractor shall be reimbursed for such additional expense. If a change in the scope of the Work either increases or decreases the cost of the Work, <u>Schedule A</u> shall be appropriately amended.

3

6.    **ACCOUNTING RECORDS**

Contractor shall keep complete and detailed books and records of account in accordance with generally accepted accounting principles, showing the actual direct costs reimbursable to Contractor as part of the cost of the Work under the provisions of this Agreement.

7.    **APPLICATIONS FOR PAYMENT**

7.1    <u>Billing Address</u>. Contractor shall submit one invoice each month for services performed under this Agreement for the immediately preceding month. The invoice should be sent to:

Elizabeth B. Sullivan
Managing Director
MBIA Insurance Corporation
113 King Street
Armonk, NY 10504

7.2    <u>Invoices</u>. Each month during the term of this Agreement, as soon as actual labor hours are determined for the preceding month, but in no event later than the fifth business day of the month, an invoice shall be submitted to MBIA by Contractor. Each invoice shall reflect the preceding month's actual S.T. and O.T. and shall be calculated in accordance with amounts set forth on <u>Schedule A</u>.

7.3    If this Agreement begins on a date other than the first day of a month or ends on a date other than the last day of a month, whether by expiration or termination by either party, then the monthly portion of the cost of the Work.

8.    **PAYMENTS TO CONTRACTOR**

8.1    MBIA will review Contractor's statements of monies due, in accordance with <u>Schedule A</u>, and the undisputed amount shall be payable with thirty (30) business days of receipt of invoice. MBIA shall have the option not to pay any amount if MBIA shall dispute its reasonableness or necessity. MBIA and Contractor shall make a good faith effort to resolve such dispute prior to the next payment date.

8.2    Upon expiration or termination of this Agreement, the final payment for the last period during which services were performed shall be paid by MBIA to Contractor, within thirty (30) days after receipt of Contractor's final invoice and after all MBIA property, including proprietary information such as preventive maintenance schedules and other electronic files, have been returned to MBIA.

9.    **TERMINATION OF AGREEMENT AND REDUCTION IN WORK**

9.1    Contractor may stop the Work or otherwise terminate this Agreement if MBIA shall fail to make payment of undisputed amounts when due, within ten (10) days after written notice of such failure of payment.

4

9.2    MBIA reserves the right to reduce the scope of Work to be performed by thirty (30) days written notice to Contractor. Such right shall include the right to reduce the period of time during which Contractor shall perform services under this Agreement.

9.3    MBIA shall have the right to terminate this Agreement, without cause, for convenience, upon thirty (30) days written notice. Contractor shall have the right to terminate this Agreement upon one hundred twenty (120) days prior written notice to MBIA.

9.4    If the Contractor files for bankruptcy, has an involuntary petition filed against it which is not dismissed within sixty (60) days, dissolves, is insolvent, fails to promptly pay for materials or services for which it has received payment from MBIA, creates or permits the creation of any lien on any property or premises of MBIA, makes an assignment or arrangement for the benefit of its creditors, refuses or neglects to perform the Work properly and diligently (including failure to perform as a result of strike, walkout, or labor dispute affecting Contractor or others), or fails to perform any of the provisions of this Agreement, MBIA may, at its option, after written notice to Contractor, declare Contractor in default, terminate Contractor's right to proceed with all or part of the Work, and take control or possession of materials, vehicles, equipment supplies, tools and facilities and finish such terminated Work by such means as it sees fit; provided, however, with respect to any refusal or neglect by the Contractor to perform the Work properly and diligently, or failure to perform under any provisions of this Agreement, the Contractor shall have ten (10) days from receipt of written notice of such default from MBIA to cure the default. Upon termination pursuant to this provision, Contractor shall thereupon assign to MBIA any subcontracts for goods or services selected by MBIA to be so assigned.

9.5    MBIA reserves the right, upon termination of this Agreement, or upon completion of the Work hereunder (whether as a result of reduction in the scope of Work or otherwise), to contract out parts of the Work, including the right to retain Contractor's subcontractors, and the right to hire Contractor's employees, or to award any or all of the Work to any contractor it sees fit. MBIA, at such termination or completion, shall take possession of all materials, vehicles, equipment, supplies, tools and facilities owned by MBIA or for which Contractor shall have been reimbursed by MBIA as part of the cost of the Work (except for such items as to which MBIA shall have accepted a credit or salvage value).

9.6    If MBIA terminates this Agreement, MBIA shall reimburse Contractor for any unpaid expenses that have been incurred by Contractor and is due, subject to the limits set forth on Schedule A, and in addition, shall pay the prorated portion of the Fixed Administrative Costs for the period up to and including the date of termination. MBIA can deduct from the amount due hereunder any amount that MBIA may be required to pay to a third party, due to the nonpayment by Contractor of any amount. Contractor shall, as a condition of receiving the payments referred to, execute and deliver to MBIA any and all instruments that may be required to transfer property to MBIA, or otherwise required for the orderly termination of this Agreement.

10.    **ON-SITE OPERATIONS AND OFFICE SPACE**

MBIA shall provide Contractor with on-site office and/or operations space at the Facilities (the "Premises") for use by Contractor in the performance of this Agreement. The size and location of the Premises shall be determined by MBIA, in its sole discretion.

11.    **INSURANCE**

a.    <u>Liability Insurance</u>. Contractor shall at all times, commencing with the execution of this Agreement, and thereafter, throughout the term of this Agreement, maintain in full force and effect, at its cost, the following types of insurance coverage with the stated limits:

| | |
|---|---|
| Workers' Compensation | $ 1,000,000 |
| Comprehensive General Liability | $ 1,000,000 |
| Comprehensive Automobile Liability (owned, hired and non-owned) | $ 1,000,000 |
| (Coverage will also comply with all applicable automobile statues and no-fault laws) | $ 1,000,000 |
| Umbrella Liability Coverage | $10,000,000 |

Policies must include:

1.    contractor's protective (independent contractor), completed operations (including products), contractual liability, and broad form property damage coverage;

2.    that each policy will act as primary insurance in the event any insurance of MBIA applies to any loss;

3.    MBIA to be named as additional insured;

4.    that the rights of an insured to coverage under such policy shall not be impaired or affected by any act or omission of any insured or additional insured or of their respective employees or agents and shall not be diminished because of any additional insurance by an additional insured for its own account.

b.    <u>General Insurance Provisions</u>. All insurance provided for in this Section 11 shall be written on an "occurrence" basis, shall be carried with companies having an A.M. Best's Rating of "A-" or better and which are admitted to write such insurance in the State of New York, and shall contain a provision permitting coverage to be cancelled or reduced only after thirty (30) days written notice to MBIA. Contractor shall (i) file certificates of insurance with MBIA as evidence

6

of maintenance of all such coverages within ten (10) days following the execution of this Agreement, (ii) annually update such certificates and (iii) deliver new certificates to MBIA not less than thirty (30) days prior to any expiration or non-renewal date of any policy providing coverage under this Section.

12.    **INDEMNIFICATION**

1.    Contractor agrees to indemnify, defend and hold harmless MBIA, its subsidiaries and affiliates and their respective officers, directors, employees, agents, successors, and assigns, from any and all losses and threatened losses arising from or in connection with any of the following:

   a)    Contractor's breach of its obligations with respect to MBIA's Proprietary Information;

   b)    Any claims arising, out of or related to, occurrences Contractor is required to insure against pursuant to Sub-part B of this Section;

   c)    Any claims for sums that are due and owing to the Internal Revenue Service (the "IRS") for withholding FICA and unemployment or other state and federal taxes relating to the employees of Contractor or its subcontractors; and

   d)    (a) The death or bodily injury of any agent, employee customer, business invitee, or business visitor or other person caused by the action or omission of the Contractor, its officers, employees, subcontractors and agents; (b) the damage, loss or destruction of any real or tangible personal property caused by the action or omission of the Contractor, its officers, employees, subcontractors and agents; and (c) any claim, demand, charge, action, cause of action, or other proceeding asserted against MBIA resulting from an act or omission of the Contractor in its capacity as an employer of a person.

13.    **COMPLIANCE WITH LAWS**

   Contractor shall comply with all applicable laws, rules, regulations and procedures which govern the services provided for in this Agreement, including, without limitation, all laws, rules regulations and procedures relating to health, safety, and environmental protection. Contractor shall obtain all licenses and permits which may be required by an governmental authority for the performance of the contracted services and shall pay all fees and charges therefore.

13.1    <u>Nondiscrimination and Affirmative Action</u>.  Without limiting anything else contained in this Agreement, Contractor shall be required to conform to applicable local, state and federal nondiscrimination and affirmative action laws, regulations and orders.  Without limiting the foregoing the Contractor shall meet the following requirements:

13.1.1    <u>Equal Employment Opportunities</u>.  Contractor shall not discriminate in employment based upon race, color, religion, sex, age, national origin or

handicap. Contractor shall demonstrate a commitment to employee diversity, in order to achieve the goal of equal opportunity in employment.

13.1.2 <u>Small Business Opportunities.</u> Contractor shall encourage the participation of small business enterprises.

13.1.3 <u>Minority and Other Disadvantaged Business Opportunities.</u> Contractor shall encourage the participation of minority business enterprises and other disadvantaged business

13.2 <u>Health and Safety.</u> Without limiting the foregoing general statement of Contractor's obligations, Contractor shall ensure that its employees wear all personal protective equipment necessary to protect such employees from potential hazards, including, without limitation, all personal protective equipment required by applicable laws, rules, regulations and procedures.

13.2.1 Without limiting anything else contained in this Agreement, Contractor shall comply with all applicable occupational safety and health standards, including but not limited to, those set forth in Part 19 10 of Title XXX of the Code of Federal Regulations, pursuant to the authority in the Occupational Safety Health Act of 1970 (OSHA). When no OSHA standard exists, federal or other nationally recognized standards shall apply.

13.2.2 Contractor shall implement a safety program which shall be subject to approval of MBIA's Corporate Safety Department. All portions of that program shall be adhered to and subject to audit by MBIA's Corporate Safety Department with provisions for penalties for non-performance. Failure to execute MBIA's option to audit Contractor's safety program does not create or imply any liability on the part of MBIA.

13.2.3 Contractor shall provide all safety equipment (including, but not limited to, hearing protection, protective clothing, etc., as needed for safe performance of the job) to their employees and shall provide training in the use of such equipment, as well as any safety-related training in the safety program described in Article 13.2.1 of this Agreement.

13.3 <u>Environmental Quality Control.</u> Without limiting anything else contained in this Agreement, Contractor shall maintain and operate systems so as to comply with all the requirements of all applicable local, state, and federal rules, regulations, codes, ordinances, laws, etc., pertaining to air and water quality control. Contractor shall promptly notify MBIA if it receives notification from any source of any claim of violation of any such requirement.

13.3.1 Contractor shall promptly notify MBIA of the receipt of any communication from the Environmental Protection Agency (the "EPA") indicating that any facility, proposed or in use under the Agreement, is under consideration to be listed on the EPA List of Violating Facilities.

13.3.2 Without limiting any other indemnification obligation of Contractor under this Agreement, Contractor shall defend, indemnify and hold harmless MBIA against

8

imposition of fines levied as a result of violations and shall pay any fine levied that is the result of improper operations and maintenance in lieu of different complying procedures that the Contractor had notified MBIA were Contractor's recommended procedures unless operating or maintenance procedures leading to the violation were expressly required by MBIA. In those cases where it is adjudged that the procedures leading to a violation were directed by MBIA or where Contractor clearly had no control over the emissions, e.g., equipment manufacturing defect or design fault, MBIA shall reimburse Contractor of any such suit and MBIA shall have exclusive control of litigation.

13.3.3    Contractor shall dispose of all hazardous waste items in compliance with all federal regulations, including but not limited to, the EPA's Hazardous Waste Management Rules. Any fines resulting from the acts or omissions of the Contractor will be the responsibility of the Contractor and will not be included in the cost of the Work.

14.    **PROPRIETARY INFORMATION**

In the course of performing services under this Agreement, it is possible that Contractor may obtain access to confidential and proprietary information of MBIA, such as passenger or customer lists and pricing information. Contractor agrees that if it acquires and such information in the course of performing services under this Agreement, it shall maintain such information in confidence and will not disclose such information to a third party during the term of this Agreement, unless Contractor has obtained the prior written consent of MBIA. Contractor may make disclosure pursuant to requirements of a governmental agency or disclosure required by operation of law, <u>provided</u>, that Contractor shall give MBIA reasonable advance notice to contest such requirement of disclosure.

15.    **FORCE MAJEURE**

In the event that operations in an area served under this Agreement are halted or substantially decreased by reason of strike, labor dispute, picketing, Act of God, or other cause beyond the control of a Party, this Agreement (the services provided hereunder and payment for services hereunder) may be suspended for the duration of such halted or decreased operations, on twenty-four (24) hours notice addressed by the impaired Party to the other Party.

9

16.    **GOVERNING LAW**

This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

17.    **SUBCONTRACTS ASSIGNMENT**

All subcontractors (if applicable) must be approved in writing by MBIA prior to execution and shall conform to any applicable requirements of this Agreement. All subcontractors shall meet the same requirements and shall have the same obligations assumed by Contractor with respect to the portion of the Work that will be performed by such subcontractors. This Agreement shall not be assigned, in whole or in part, by the Contractor. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties, their respective successors and assigns.

18.    **NO WAIVER**

No provision of this Agreement shall be deemed to have been waived by MBIA unless such waiver is in writing and signed by MBIA, nor shall any custom or practice which may evolve between the parties in the administration of the terms hereof be construed to waive or lessen the right of MBIA to insist upon the performance by Contractor in strict accordance with the terms hereof.

19.    **REMEDIES CUMULATIVE**

Each right and remedy of either Party provided for in this Agreement, or now or hereafter existing at law, in equity of by statute or otherwise, shall be cumulative and concurrent, and the exercise or beginning of the exercise of any one or more of such rights or remedies shall not preclude the exercise of that right or remedy in the future or the exercise of any other right or remedy at any time.

20.    **ATTORNEYS' FEES**

In the event either party shall be in default in the performance of any of its obligations under this Agreement, and an action shall be brought for the enforcement hereof in which it shall be determined that such party was in default, the party determined to be in default shall pay to the other party all expenses incurred in connection therewith including, without limitation, reasonable attorneys' fees and court costs.

21.    **ENTIRE AGREEMENT**

This Agreement, including Exhibit A and Schedule A hereto, which Exhibit and Schedule are incorporated herein by reference, constitutes the entire understanding of the parties hereto with respect to the matters addressed herein, and this Agreement supersedes all prior negotiations and agreements, if any, between the parties related to its subject matter.

22.    **PARTIAL INVALIDITY**

If any provision of this Agreement shall be determined to be invalid or unenforceable, the remainder of this Agreement shall not be affected thereby and each provision of this Agreement shall be valid and shall be enforceable to the fullest extent permitted by law.

23.    **MODIFICATIONS AND AMENDMENTS**

This Agreement shall not be modified or amended in any respect except by written instrument duly executed by or on behalf of each of the parties to this Agreement.

**SERVICEFORCE, INC.**

By:

Name:    Anthony S. Lifrieri

Title:    President

**MBIA INSURANCE CORPORATION**

By:

Name:    Elizabeth Sullivan

Title:    Managing Director

11



## COST OF THE WORK

### 113 King Street
### Armonk, NY

- Assume period of **March 1, 2003** to **February 28, 2004**, the base monthly charge as per described staffing in Section 4 of contract will be: **$36,541.82** per month, plus applicable sales tax.

- For the period of **March 1, 2004** to **February 28, 2005**, the base monthly charge as per described staffing in Section 4 of contract will be: **$37,867.17** per month, plus applicable sales tax (see attached breakouts).

### HOURLY RATES

| POSITION | S.T. | O.T. (x1.5) |
|---|---|---|
| Chief Engineer | $65.06 | $84.04 |
| Assistant Chief Engineer | 54.26 | 69.81 |
| Engineer | 52.74 | 67.80 |
| Apprentice | 38.84 | 55.24 |

The foregoing billing rates will be charged for all hours required to be paid by Service Force, Inc. under the Collective Bargaining Agreement with Local 30 that expires February 28, 2005.

Service Force, Inc. will pay applicable payroll taxes and insurance costs related to our services. If federal, state or municipal taxes and/or insurance costs are changed during the course of this agreement, then Service Force, Inc., will notify MBIA in writing as to the increases or decreases of such changes and adjust the contract billing amount accordingly.

Service Force, Inc., policy requires payment of invoices within thirty (30) days of receipt of invoice.



## MECHANICAL MAINTENANCE
### MBIA
113 King Street
Armonk, NY

## I.   MECHANICAL OPERATION:

We shall employ the mechanical/electrical operation and maintenance staff and shall supervise and control the work of said staff as it pertains to operation and maintenance of the following facilities:

    A.  Mechanical Equipment
    B.  Heating, Ventilating and Air Conditioning
    C.  Plumbing
    D.  Electrical
    E.  Others as directed by MBIA Management

The work shall include, but not be limited to, the following programs:

    A.  Establishment of preventative maintenance program
    B.  Inspection and adjustment of operating equipment and machinery on Owner approved schedules
    C.  Servicing complaints and requests during the daily shifts
    D.  Training and upgrading tradesmen skill
    E.  Maintaining stock inventory of parts and supplies.

Periodic reports shall be submitted to MBIA Management, detailing the work accomplished by these programs.  These shall include but not be limited to:

    A.  Engineer's Log (retained at central control stations)
    B.  Monthly status report and forecast
    C.  History and registers of call-tickets, work orders and P.M. orders
    D.  Daily time records.

## II.   CONSULTING SERVICES

In conjunction with the foregoing services, we shall make surveys and inspections of all operations and, from time to time, submit reports and detailed recommendations for the improvement of such facilities.

## III.   OPERATION

The Mechanical Maintenance Department, utilizing the general organizational arrangement set fort below, will provide operation and maintenance services as required by MBIA Management.

- (1) One Chief Engineer
- (1) One Assistant Chief Engineer
- (1) One Engineer
- (1) One Apprentice

1

Description of the duties and responsibilities of Maintenance Engineering Department Supervisor, Engineers, etc., are contained in Exhibit "A" of this proposal.

## IV.    MAINTENANCE ENGINEERING DEPARTMENT

**Function:**

To provide the Engineering and Craft services required for the safe and efficient operation of the building and to provide these services to conform with facilities objectives.

**Responsibility:**

The Maintenance Engineering Department is responsible for:

1. Engineering and execution of planned maintenance, repairs, minor installation and replacements within the scope of the service group.
2. Providing freedom from breakdown that would interfere with objectives for facility operations.
3. Maintaining equipment in a satisfactory condition for safe operation.
4. Maintaining equipment at its maximum operating efficiency.
5. Reducing to a minimum the down time resulting from breakdowns.
6. Continuous investigation into the causes for and remedies of emergency breakdowns
7. Developing and implementing a sound preventive maintenance program.
8. Maintaining adequate spare parts consistent with operating requirement.
9. Maintaining an adequate supply of tools to effectively perform maintenance service.
10. Establishing and maintaining adequate property and accounting records covering building equipment and property.
11. Provide engineering and supervision of construction projects within the scope of the group.
12. Responsible for familiarity and supervision of all work by outside service organizations on building equipment.
13. Responsible for maintaining adequate utility services, such as electricity, water sewer services, steam compressed air, etc.
14. Responsible for maintaining the fire prevention integrity of buildings and for liaison with fire insurance carrier and Fire Department.
15. Continuously investigate methods to improve the operation of building facilities.
16. Promote improvement and uniformity in operating practices and procedures.
17. Maintaining an adequately trained engineering staff to effectively execute the functions of the Maintenance Engineering Department.

2

## V.   JOB DESCRIPTIONS

**Chief Engineer:**

To administer and coordinate all engineering maintenance activities to conform with MBIA objectives. His duties and responsibilities will be as follows:

1. Responsible for the organization and functioning of the Maintenance Engineering Department.
2. To maintain active contacts with supervisory and craft personnel with the purpose of promoting high performance standards in all maintenance activities.
3. Responsible for the development and implementation of preventive maintenance procedures.
4. Work in close conjunction with MBIA Building Manager in the development and assignment of work schedules.
5. Prepare daily, weekly and monthly reports to owner on activities of operation.
6. Prepare daily, weekly time sheets and handle personnel matters.
7. Promote programs for the orientation and on-the-job training for new craft employees.
8. Responsible for the coordination and inspection of sub-contractor activities in conformance with facility operation and maintenance objectives.
9. Direct operation in the application of all safety regulations and programs.
10. Direct operations in maintaining adequate stores of material and equipment. Advise MBIA Management, of needed supplies.
11. Establish adequate controls necessary to secure minimum maintenance costs for maximum operating efficiency.
12. Responsible for periodically checking the work performance of all Maintenance Engineering Department personnel and for promoting and implementing methods to effect a high level of performance standards.
13. Responsible for coordination of all maintenance department's efforts with MBIA Management, including non-routine requirements requested by management.
14. Responsible for reporting to MBIA, Building Manager any proposed changes in staff shift assignments, requests for overtime work, vacation scheduling, worker sickness and/or disability, disciplinary matters, emergency situations, etc. If an emergency occurs and Management cannot be consulted with, he is responsible to take what action is necessary to correct such a situation.
15. Routinely evaluate the performance of personnel in meeting Department objectives.
16. Assist in the promotion of good labor relations and to assist in the handling of unsettled labor disputes.
17. Supervise the maintenance of a proper record keeping system relevant to personnel and maintenance matters.
18. Assist in the development of standards for craft performance and assist in the evaluation process determining the employee meeting these standards.
19. Actively support all MBIA, programs for the improvement of methods and the reduction of costs.

3

**Maintenance Engineers:**

1. Analyze and perform repair and preventive maintenance orders using appropriate materials, tools and methods.
2. Advise supervisor of material requirements.
3. Report to supervisor on a daily basis the status of all work orders performed or remaining to be performed.
4. Periodically record technical data pertinent to the operation of mechanical systems or work order assignments.
5. Advise supervisor from inspection of equipment of the necessity of further maintenance repairs or replacements.
6. Make equipment safety checks and report all unsafe conditions immediately to supervisor
7. Responsible for taking remedial action to correct any emergency situation and/or to prevent damage to systems, equipment and operations when supervisory consultation is impractical.
8. Responsible for the effective completion of all assigned work with the objective of maintaining the building at high level of maintenance and eliminate down time.

**Apprentice:**

To assist the Chief Engineer, Engineer and/or mechanic in the performance of their duties.

4